■ Jose A. Ramos, an Infant, by His Mother and Natural Guardian, Venecia DeLeon, et al., Respondents, v 600 West 183rd Street et al., Appellants.—Order of the Supreme Court, New York County (Edith Miller, J.), entered December 3, 1987, which denied defendants' motion for summary judgment, unanimously reversed, on the law, and the motion is granted, without costs.

The infant plaintiff was eight years old in September 1984 when he fell from a window of an apartment he was visiting that was owned and managed by defendants and leased to an individual with two children of her own, ages 12 and 14. Seeking damages for personal injuries and loss of consortium, the infant and his mother claim that the accident would not have occurred had the window been equipped with a window guard, and that defendants' failure to install one constitutes common-law negligence, a breach of the warranty of habitability set out in Real Property Law § 235-b, and a violation of New York City Health Code § 131.15 (regulation), requiring landlords of multiple dwellings to install window guards in apartments where children 10 years old or younger reside *(see also,* Administrative Code of City of New York § 17-123).

The regulation, prior to its amendment in 1986, required landlords to give tenants notice of their obligation to install window guards in any apartments where a child 10 years old or younger resides, to inquire of each tenant as to whether his was such an apartment, and, if the tenant responded positively, to install window guards in that tenant's apartment. The obligation to install window guards was, in other words,

conditioned upon a positive response from the tenant to the landlord's inquiry.

The window out of which the infant plaintiff fell was never equipped with a guard. Since it appears that the tenant and her two children had been living in the apartment when one or both of the children were 10 years old or younger, we assume in plaintiffs' favor, notwithstanding strong indications to the contrary (infra, last para), that during this period of time defendants were in violation of the regulation. We also assume in plaintiffs' favor that a violation of the regulation is a breach of the warranty of habitability, and that landlords are strictly liable for injuries caused by breaches of the warranty of habitability (but see, Curry v New York City Hous. Auth., 77 AD2d 534). Yet, even if all this be assumed, still the action must be dismissed since the accident occurred at a time when defendants, by virtue of the ages of the children residing in the apartment, were no longer in violation of the regulation.

Plaintiffs assert that the superintendent of the building knew or should have known that the injured infant "had played on and in the vicinity of the said window" on prior frequent visits to the apartment and, imputing such knowledge to defendants, argue that these circumstances imposed upon them a common-law duty of reasonable care to the injured infant to make the window safe (citing Basso v Miller, 40 NY2d 233, 241 [landowners are subject to a "single standard of reasonable care under the circumstances whereby foreseeability shall be a measure of liability"]; Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 328 ["Housing codes do not provide a complete delineation of the landlord's obligation (under the warranty of habitability), but rather serve as a starting point in that determination by establishing minimal standards that all housing must meet"]). At the least, plaintiffs argue, the question of whether defendants' failure to install a window guard was reasonable under the circumstances should be left to a jury. We disagree. At common law, liability in tort with respect to land and buildings generally depended on occupation and control; as a result, it was the tenant, not the landlord, who was generally held responsible for injuries caused by the condition or use of leased premises (see, 34 NY Jur, Landlord and Tenant, §§ 443, 455). Thus, if a window lacking a guard is to be deemed a dangerous condition, any common-law duty to eliminate the danger by installing a guard would be the tenant's, not the landlord's. The regulation shifts this responsibility to the landlord, and

thereby provides a conceivable basis for holding a landlord liable for a window fall, but only if a child 10 years old or younger resides in the apartment. Absent such a child there is no duty to install a guard, and absent a duty there can be no liability.

Plaintiffs argue that the tenant's two children "had just emerged from the class of children who are expressly protected by [the regulation]", and that since a window guard is a "fixture" attached to the building that a tenant has "no right to remove", the accident would not have happened "had the landlord installed window gates back then" when either of the children had not yet turned 11 years old. While we accept, for the sake of argument, that defendants' violation of the regulation contributed to the accident, more than causation must be shown to make out negligence; there must also be a duty that has been breached *(Pulka v Edelman,* 40 NY2d 781, 782; *Eiseman v State of New York,* 70 NY2d 175, 187 [foreseeability of injury does not determine the existence of duty]). Here, the duty to install window guards, by the terms of the regulation that created and defined it, had lapsed by the time of the accident. In the contemplation of the regulation, the window out of which plaintiff fell was no longer a hazard, or at least not one so serious as to be within the scope of the duty it created. Essentially a policy decision made by expert regulatory authority allocating the risk associated with a particular hazard, it is not for the court to say otherwise *(cf., De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055).

We should also say that plaintiffs' proof of defendants' alleged antecedent violation of the regulation is conjectural at best. In support of defendants' motion for summary judgment, affidavits were submitted by the managing agent stating that it was its "custom and practice" to send all of its tenants a form notice approved by the Department of Health and designed to effect compliance with the inquiry-response provision of the then regulation; by the owner stating that its files contained no response from the tenant to the managing agent's notice; and by the tenant stating that she received the notice from the managing agent but never sent back a response. Against this, plaintiffs argue that defendants' proof raises issues of credibility that must abide depositions, if not a trial, an argument we do not address since the facts plaintiffs seek to develop are insufficient as a matter of law to sustain their claim. Concur—Murphy, P. J., Kupferman, Carro, Kassal and Wallach, JJ.

■ IRVINGTON ENTERPRISES, INC., Doing Business as THE