[858 NE2d 1127, 825 NYS2d 422]

Aaron Rivera, an Infant, by His Mother and Natural Guardian, Denise Rivera, et al., Appellants, v Nelson Realty, LLC, et al., Respondents.

Argued September 13, 2006; decided October 24, 2006

## POINTS OF COUNSEL

*Popkin & Popkin, L.L.P.,* New York City (*Eric F. Popkin* of counsel), for appellants. I. The owner and/or possessor of a multiple dwelling apartment building within the City of New York must maintain the entire premises in a reasonably safe manner free from dangerous conditions. (*Basso v Miller,* 40 NY2d 233; *Mas v Two Bridges Assoc.,* 75 NY2d 680; *Juarez v Wavecrest Mgt. Team,* 88 NY2d 628; *Duff v De Sorbo,* 304 AD2d 870; *Weiss v City of New York,* 16 AD3d 680; *Village of Saranac Lake, Inc. v State of New York,* 17 AD3d 920; *Dwellingham v 125 Uptown Realty Assoc.,* 279 AD2d 261; *Trincere v County of Suffolk,* 90 NY2d 976; *Kush v City of Buffalo,* 59 NY2d 26; *Peralta v Henriquez,* 100 NY2d 139.) II. The insulation requirements of section 27-809 of the Administrative Code of the City of New York apply to the exposed pipes of a metal steam radiator.

*Lester Schwab Katz & Dwyer, LLP,* New York City (*Steven B. Prystowsky* and *Harry Steinberg* of counsel), for respondents. I. Defendants did not owe a duty to childproof the apartment plaintiffs leased. Any requirement to childproof the apartment should be legislated by state or municipal authorities. (*Tagle v Jakob,* 97 NY2d 165; *Bua v Fernandez,* 15 NY2d 664; *Juarez v Wavecrest Mgt. Team,* 88 NY2d 628; *Matter of Sorbonne Apts. Co. v Board of Health of City of N.Y.,* 88 Misc 2d 970; *Molina v*

*Sercia,* 290 AD2d 425; *Moore v Bender,* 280 AD2d 588; *Costanzo v New York City Hous. Auth.,* 158 AD2d 576; *Ramos v 600 W. 183rd St.,* 155 AD2d 333; *Basso v Miller,* 40 NY2d 233; *Rodriguez v City of New York,* 272 AD2d 68, 95 NY2d 919.) II. Defendants cannot be held liable if they merely furnished a condition for the occurrence rather than one of its causes. (*Sheehan v City of New York,* 40 NY2d 496; *Margolin v Friedman,* 43 NY2d 982; *Rivera v City of New York,* 11 NY2d 856; *Ventricelli v Kinney Sys. Rent A Car,* 59 AD2d 869, 45 NY2d 950; *Martinez v Lazaroff,* 66 AD2d 874, 48 NY2d 819; *Green v New York City Hous. Auth.,* 82 AD2d 780, 55 NY2d 966; *Hennigan v Johnson,* 245 AD2d 1130; *Sanchez v Biordi,* 259 AD2d 434; *Dugue v 1818 Newkirk Mgt. Corp.,* 301 AD2d 560; *Napoli v Menicucci,* 299 AD2d 466.) III. Administrative Code of the City of New York § 27-809, requiring pipes carrying steam water to be insulated, does not apply to radiators. (*People v Finnegan,* 85 NY2d 53, 516 US 919; *People ex rel. Harris v Sullivan,* 74 NY2d 305; *Matter of Chemical Specialties Mfrs. Assn. v Jorling,* 85 NY2d 382; *Juarez v Wavecrest Mgt. Team,* 88 NY2d 628; *McKuskie v Hendrickson,* 128 NY 555; *Servido v Superintendent of Ins.,* 77 AD2d 70, 53 NY2d 1041; *Matter of Aylesworth v Phoenix Cheese Co.,* 170 App Div 34; *People v Nemadi,* 140 Misc 2d 712; *People v Premier House,* 174 Misc 2d 163; *Sanchez v Biordi,* 259 AD2d 434.)

## OPINION OF THE COURT

R.S. SMITH, J.

We hold that the landlord of a home where children live does not have a common-law or other duty to provide or install radiator covers.

## Facts and Procedural History

As in every case where a child is seriously injured, the facts are upsetting. Plaintiff Aaron Rivera, then three years old, was seriously burned when he climbed onto an uncovered radiator in his parents' bedroom, where he was playing unsupervised with his brothers, ages four and two. Defendants, the landlord of the apartment where Aaron lived and the company that managed the building, knew that young children were living in the apartment; knew that the radiators in the apartment were not covered; and knew that the children's parents believed that the radiators presented a danger. Several times during the months preceding the accident, Aaron's parents had asked defendants to provide radiator covers, but defendants had refused on the ground of expense.

Aaron and his mother brought this action to recover for injuries resulting from the accident. Supreme Court denied defendants' motion for summary judgment, finding an issue of fact as to whether "defendants breached their duty to maintain the premises in a safe condition." The Appellate Division, with one Justice dissenting, reversed and dismissed the complaint, holding that "it was not the landlord's duty to provide a cover for the radiator" (20 AD3d 316, 316-317 [2005]). We now affirm the Appellate Division's order.

## Discussion

Plaintiffs argue that a jury could find defendants liable for their failure to install radiator covers both under the common law and under the New York City Administrative Code. We reject both arguments.

## I

Plaintiffs' common-law argument is based on *Basso v Miller* (40 NY2d 233, 241 [1976]). They read that case as imposing a single, simple duty on owners and occupiers of land—that of "reasonable care under the circumstances" (*id.*). A jury could find, plaintiffs assert, that it was not reasonable under the circumstances for defendants to refuse to install radiator covers in an apartment occupied by young children. But plaintiffs read *Basso* too broadly. The law is not that simple.

The question we addressed in *Basso* was whether to continue to apply the long-standing common-law rule that the duty of an owner or occupier of land to persons on that land depended upon the status of the plaintiff. Under the traditional doctrine, a plaintiff must be fit into one of three categories: an invitee, present for the business purposes of the landowner; a licensee, i.e., a social guest; or a trespasser. The duty owed to each was different. Finding these distinctions unduly complicated and difficult to apply, we discarded them in *Basso* in favor of what we called "the simple rule of reasonable care under the circumstances" (40 NY2d at 240-241).

Chief Judge Breitel, joined by Judge Jasen, concurred in the result in *Basso*, but disagreed with the majority's approach, which he characterized in sweeping terms. Chief Judge Breitel wrote:

> "Abandoning all the rules governing liability of a possessor to one injured on his property, rules

evolved progressively in the common-law process over the past 200 years, the court substitutes an amorphous 'single standard' of 'reasonable care under the circumstances' . . . [T]he substitution is deceptively simple; it raises more problems than it solves" (40 NY2d at 243 [Breitel, Ch. J., concurring]).

In the years since *Basso*, we have not deviated from its core holding—that the duty of a landowner does not depend upon the plaintiff's status as invitee, licensee or trespasser—but we have not given it the broad interpretation that the concurring Judges feared. Later cases made clear that we did not, in *Basso*, abandon "*all* the rules governing liability of a possessor to one injured on his property."

Thus, in *Tagle v Jakob* (97 NY2d 165, 168 [2001]), we applied the common-law rule that "[o]rdinarily, a servient owner has no duty to maintain an easement to which its property is subject," rejecting on that basis the claim of a plaintiff who was injured by touching an electric wire maintained by a utility company on the defendant's property. Discussing our holding in *Basso*, we said in *Tagle*: "Although a jury determines whether and to what extent a particular duty was breached, it is for the court first to determine whether any duty exists, taking into consideration the reasonable expectations of the parties and society generally" (*id.*).

More directly relevant to this case, *Basso* did not abrogate the common-law rule that, with some exceptions, a landlord is not liable to a tenant for dangerous conditions on the leased premises, unless a duty to repair the premises is imposed by statute, by regulation or by contract. As the Appellate Division explained in *Ramos v 600 W. 183rd St.* (155 AD2d 333, 334 [1st Dept 1989]), discussing a landlord's asserted duty to install window guards in an apartment:

> "At common law, liability in tort with respect to land and buildings generally depended on occupation and control; as a result, it was the tenant, not the landlord, who was generally held responsible for injuries caused by the condition or use of leased premises." (*See* Restatement [Second] of Torts § 356; *Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 642 [1996] ["Generally, a landlord may be held liable for injury caused by a defective or dangerous condition upon the leased premises *if the landlord*

*is under a statutory or contractual duty* to maintain the premises in repair and reserves the right to enter for inspection and repair" (emphasis added and citations omitted)].)

While the common-law rule of nonliability of a landlord to a tenant was not abolished by *Basso*, we have recognized significant modifications of that duty by statute and contract. Long before *Basso* was decided, what is now Multiple Dwelling Law § 78 (formerly the Tenement House Act) had been enacted. It provides that every multiple dwelling "shall be kept in good repair" and that "[t]he owner shall be responsible for compliance" with that obligation (Multiple Dwelling Law § 78 [1]). That statute expanded the landlord's duty to repair defective conditions, limited at common law to areas of the leased property over which the landlord retained control (*see* Restatement [Second] of Torts § 360), to all parts of the premises leased (*Altz v Leiberson*, 233 NY 16, 17-18 [Cardozo, J., 1922]). In *Juarez*, we held that Multiple Dwelling Law § 78, in combination with Local Law No. 1 (1982) of New York City, requiring landlords to remove or cover lead paint in apartments where young children lived, could justify holding landlords liable in damages for failure to comply with the local law (*see* 88 NY2d at 642-643).

Even in the absence of statute, a common-law duty to repair defective conditions within the home may and often does arise from the contractual relationship between landlord and tenant. Thus in *Chapman v Silber* (97 NY2d 9, 20 [2001]), we held that in a community where no legislation governing lead paint existed, the defendant landlords had assumed a duty to make repairs, and that under "traditional common-law principles" a landlord who was on notice of lead-paint hazards was required to remedy them. The question for us here is whether defendants' failure to supply radiator covers breached any duty to keep plaintiffs' apartment in good repair.

■ Our answer to the question is no. Plaintiffs do not claim that the radiator that injured Aaron needed repair, or was defective in any way. Plaintiffs' claim is that an uncovered radiator in good working order, though not a hazard in a home occupied only by adults, is dangerous to children. No duty to remedy this alleged hazard is imposed by the Multiple Dwelling Law or arises under common law by virtue of the lease. Accordingly, any duty to protect children from uncovered radiators remains that of the tenant, unless some other statute or regulation imposes it on the landlord (*see Rodriguez v City of New York*, 20

AD3d 327 [1st Dept 2005]; *cf. Ramos*, 155 AD2d at 334 [rejecting argument that landlords had a "common law duty of reasonable care . . . to make . . . window(s) safe," where a regulation relating to window guards was not violated]). The decision whether radiator covers must be supplied by landlords is thus left to legislators and regulators, who are in the best position to balance the harm prevented by this safety measure against its cost—a cost which, if imposed on landlords, becomes part of the overall cost of rental housing.

## II

Plaintiffs argue, in the alternative, that New York City Administrative Code § 27-809 required defendants here to install the radiator covers that Aaron's parents requested. That section provides: "All accessible piping in habitable and occupiable rooms carrying steam, water, or other fluids at temperatures exceeding one hundred sixty-five degrees Fahrenheit shall be insulated . . . ." Plaintiffs say that radiators are "piping," which the Code provision requires to be "insulated" by covers.

Plaintiffs' reading of the regulation is strained. People do not ordinarily speak of radiators as "piping" or of radiator covers as insulation. And other provisions of the Administrative Code show that the authors of the Code used the word "radiators" to mean something different from "piping" or "pipes." Thus, section 10-118 refers to "used materials or parts of buildings or structures, including but not limited to, *piping*, heating equipment, wiring, or other fixtures, windows or parts thereof, doors, *radiators*, bricks, wood beams or other parts" (Administrative Code of City of NY § 10-118 [b] [emphasis added]). And section 27-4200 provides: "*Radiators* shall not be less than four inches above the floor. All steam *pipes* or risers within six feet of the floor shall be protected with wire guard or noncombustible pipe covering" (Administrative Code of City of NY § 27-4200 [i] [emphasis added]; *cf.* 14 NYCRR 375.14 [b] [3] [referring to "(s)team pipes and radiators"]; 18 NYCRR 414.5 [d] ["(r)adiators and pipes"]; 18 NYCRR 442.15 [a] [10] ["steam pipes, heating pipes and radiators"]). Finally, it makes sense to treat pipes and radiators differently: no one knows from looking at a pipe whether it carries hot or cold water, but most people, other than young children, can be expected to assume that radiators are hot.

In short, Administrative Code § 27-809 did not require defendants to install radiator covers in the apartment where Aaron was injured.

* * *

Neither common law nor any statute or regulation requires landlords to cover radiators in rented apartments where young children live. For that reason, defendants breached no duty to plaintiffs, and plaintiffs' complaint was properly dismissed.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges CIPARICK, ROSENBLATT, GRAFFEO and READ concur; Judge PIGOTT taking no part.

Order affirmed, with costs.