■ PAUL ISAACS, Respondent, v WEST 34TH APTS. CORP., Appellant. [828 NYS2d 308]—

Order, Supreme Court, New York County (Carol R. Edmead, J.), entered on or about August 31, 2005, which denied defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs or disbursements, and the motion granted. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint.

On February 11, 2004, plaintiff, a 30-year tenant, feeling faint after taking arthritis medication for the first time, sat on the closed toilet seat in his apartment bathroom, placed his head in his hands and passed out. In doing so, plaintiff, who had no history of fainting spells or seizures, fell against a hot steam riser pipe located 16 to 24 inches from the toilet, near the back wall, and sustained second- and third-degree burns on the back of his neck. Plaintiff testified that he did not know how long he was unconscious. He had never complained to the building owner or its employees about the bathroom pipe, nor had he ever heard of any other building resident having an incident with the bathroom hot steam riser. Even at the time of plaintiff's pretrial deposition, the bathroom riser was still uninsulated and plaintiff had not requested that it be covered. The building superintendent, employed there for 11 years, had never heard of any complaints about uninsulated pipes. The building contained 127 units, all of which were steam heated by a riser pipe system. Steam would flow through the steam riser pipe, which measured three inches in diameter, to heat the bathroom. The superintendent testified at his deposition that if a tenant had requested insulation for his or her riser pipes, he would have provided it, but no tenant had ever made such a request. He noted that tenants wanted the risers hot and that insulation would restrict the amount of heat available to the apartment.

Defendant landlord moved for summary judgment on the ground that the alleged hazardous condition did not violate the Building Code, particularly, New York City Administrative Code

§ 27-809 (insulation of pipes carrying steam or water required where temperature exceeds 165 degrees), arguing that the Code did not apply because the building was constructed nearly 40 years before this provision's effective date, and the exceptions to the grandfathering provision are inapplicable. The landlord also argued that plaintiff's type of injury was not, under common-law principles, a foreseeable risk of any alleged failure to insulate the steam riser pipe. Plaintiff opposed the motion with an expert's opinion that an uninsulated riser pipe situated less than two feet from plaintiff's toilet presented a negligent, unreasonably unsafe and hazardous condition. The expert also stated that he inspected the riser pipe in plaintiff's bathroom and measured an "outer surface" temperature of 165 degrees, which would burn skin "to the bone" in a short period of time.

Supreme Court denied the motion and found issues of fact as to whether the landlord had been negligent in allowing an unsafe riser pipe to exist on the premises. In so ruling, the court correctly distinguished recent decisions of this Court dismissing negligence claims based on failure to provide a radiator cover (*Rivera v Nelson Realty, LLC*, 20 AD3d 316 [2005], *affd* 7 NY3d 530 [2006]; *Rodriguez v City of New York*, 20 AD3d 327 [2005], *appeal withdrawn* 7 NY3d 751 [2006]) on the ground that the allegedly unsafe radiators involved therein were not regulated by Administrative Code § 27-809, which relates to "piping," not radiators.

In reviewing *Rivera*, the Court of Appeals reaffirmed "the common-law rule that, with some exceptions, a landlord is not liable to a tenant for dangerous conditions on the leased premises, unless a duty to repair the premises is imposed by statute, by regulation or by contract" (7 NY3d at 534). One of those exceptions is that every multiple dwelling "shall be kept in good repair" and that the "owner shall be responsible for compliance" with that obligation (Multiple Dwelling Law § 78 [1]; *Rivera*, 7 NY3d at 535). Thus, the statute extended the landlord's duty to repair, limited at common law to those areas of the leased property over which it retained control, to all parts of the demised premises (*id.*; *Juarez v Wavecrest Mgt. Team*, 88 NY2d 628, 643 [1996]). In *Rivera*, the Court of Appeals, citing *Rodriguez* (20 AD3d 327 [2005]) and *Ramos v 600 W. 183rd St.* (155 AD2d 333, 334 [1989]), held that the failure to supply radiator covers was not a breach of any duty to keep the leased premises in good repair, either under the Multiple Dwelling Law or under common law by virtue of the lease (7 NY3d at 535-536).

Unlike the situation in *Rivera* and *Rodriguez*, Administrative

Code § 27-809 does apply to steam riser pipes, but that section did not require the landlord to insulate the exposed pipe. As the record shows and plaintiff did not dispute, the Building Code does not apply since the building predated its effective date (*see* Administrative Code § 27-111), and the exceptions to the grandfathering provision are inapplicable. In no 12-month period did the building ever undergo alterations that cost 30% or more of the building's value.* Plaintiff's current argument that the landlord failed to reveal the source of its knowledge as to the lack of pre-1995 qualifying alterations is both unpreserved and without merit. Concur—Saxe, J.P., Marlow, Sullivan, Gonzalez and Malone, JJ.

---

* If, in any 12-month period, a building's alteration costs exceed 60% of its overall value, the entire building must be made Code-compliant (Administrative Code § 27-115). If the alteration costs expended in the same time frame are between 30% and 60% of the building's value, then only that portion of the building that was altered becomes subject to the Building Code provisions (Administrative Code § 27-116).