■ VICTORIA CARLOS, Appellant, v 395 E. 151ST STREET, LLC, et al., Respondents. [837 NYS2d 150]—

Order, Supreme Court, Bronx County (Betty Owen Stinson, J.), entered October 20, 2005, which granted defendants' motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion denied and the complaint reinstated.

On April 1, 2003, plaintiff Victoria Carlos brought an action against 395 E. 151st Street, the owner of her building, and Stellar Management, the building's managing agent, for injuries she allegedly suffered when scalded by hot water in her bathtub. Between April 2003 and October 19, 2004, plaintiff provided a bill of particulars, and made numerous discovery requests. The IAS court held at least three compliance conferences, all direct-

ing defendants to provide the discovery plaintiff had requested. The October 19, 2004 compliance conference resulted in a court-ordered stipulation. In that stipulation, the parties agreed that the answer would be stricken in 30 days, if defendants failed to provide specified discovery, and access to the boiler for an inspection. On November 22, 2004 and December 22, 2004, defendants served two separate responses to the October discovery demand. However, plaintiff immediately rejected both submissions as untimely. There is no indication in the record that a status conference scheduled for December 15, 2004 ever took place.

In April 2005, defendants made a motion for summary judgment. They asserted that they did not create and were not on notice of the alleged hazardous water temperature in the plaintiff's bathroom. Plaintiff opposed the motion on the ground that defendants' answer had been stricken, by operation of law. This, plaintiff argued, was due to defendants failure to comply with the 30-day discovery deadline in the October 19 order, which order they alleged was self-executing. On the merits, plaintiff asserted that summary judgment was inappropriate because defendants had not conclusively established compliance with their duty, under the New York City Administrative Code, to "install high limit stops."

The IAS court granted defendants' motion and dismissed the complaint. The court relied upon deposition testimony indicating that the boiler in the subject building was exclusively maintained by a nonparty boiler maintenance company. It also stated that defendants' noncompliance with the discovery orders, and the October 19, 2004 court-ordered conditional dismissal did not end the action, as they were not followed by a formal application by plaintiff to strike defendant's answer. We reverse.

Plaintiff contends that defendants' answer was stricken as a matter of law on November 18, based upon noncompliance with the 30-day deadline set forth in the October 19 court-ordered stipulation. However, the record reveals that defendants had substantially complied with all of plaintiff's discovery requests within several weeks of the November deadline. In addition, there was no evidence that defendants' actions were willful or contumacious (see CPLR 3126). Given the settled preference for resolving cases on their merits, we reject plaintiff's argument that defendants' answer was automatically stricken (Cruzatti v St. Mary's Hosp., 193 AD2d 579 [1993]).

On the merits of the motion, defendants assert that they are free from liability because they had delegated full responsibility for the maintenance of the boiler at the building to an indepen-

dent contractor, Atomic Boiler. They allege that they did not create, nor have notice of, any alleged defective condition. However, defendants did not address plaintiff's allegation in the complaint that they violated Multiple Dwelling Law § 78 (1) and § 77 (4).

Section 78 (1) of the Multiple Dwelling Law requires the owners of multiple dwellings to keep their premises in "good repair," and section 77 (4) of the same statute specifically requires that plumbing and drainage system be maintained in "good repair." An owner's liability under these sections is nondelegable (*see Mas v Two Bridges Assoc.*, 75 NY2d 680, 687-688 [1990]; *Jacobson v 142 E. 16 Coop. Owners*, 295 AD2d 211 [2002]). However, an owner can look to a party with whom it maintained a contract for maintenance to indemnify it for its losses pursuant to proven violations of the Multiple Dwelling Law (*see Rogers v Dorchester Assoc.*, 32 NY2d 553 [1973]).

In addition to the alleged violations of Multiple Dwelling Law § 78 (1) and § 77 (4), plaintiff also asserts that defendants breached their obligations under New York City Administrative Code §§ 27-897 and 27-901. These sections incorporate by reference the requirement that bath and shower temperature control valves "be equipped with high-limit stops adjusted to a maximum hot water setting of 120 degrees Fahrenheit" (Administrative Code, tit 27, ch 1, Appendix, Reference Standard RS 16 § P107.6 [i]). Because the record shows that the building in question predates 1997, when the high-limit stop requirement went into effect, the requirement would not apply to the building under the Building Code's "grandfathering" provision (Administrative Code § 27-111), unless one of the Building Code's exceptions to section 27-111 applies (*see Isaacs v West 34th Apts. Corp.*, 36 AD3d 414, 416 [2007], *lv denied* 8 NY3d 810 [2007]). The existing record does not disclose whether any exception to section 27-111 applies.

Recently, in *Baumgardner v Rizzo* (35 AD3d 223 [2006], *lv denied* 8 NY3d 806 [2007]), we dismissed an action bought on behalf of an infant who suffered severe burns from a "sudden and unexpected blast of scalding water emanat[ing] from the bathroom sink" (*id.* at 224). There, the defendant who maintained the boiler received a complaint of "poor hot water." Eleven days before the accident, it serviced the boiler and submitted a work order explicitly stating that the water temperature was "ok" (*id.* at 224-225). Plaintiff submitted an affidavit from an engineer who had not inspected the premises, but who nonetheless opined that the injuries were caused by "a malfunctioning hot water mixing valve [which] caused a surge

of high temperature" (*id.*). In the circumstances, we concluded that the expert's affidavit was speculative, and that the landlord was not on notice of a hazardous hot water condition. Accordingly, we dismissed the complaint.

Here, unlike *Baumgardner*, it is presently unclear whether all of the relevant maintenance history of the boiler is in the record, which does not include deposition testimony or an affidavit by personnel of defendants' boiler maintenance contractor. In further contrast to *Baumgardner*, deposition testimony in this record reveals alleged complaints to the building superintendent about bursts of excessively hot water. Since the building superintendent denied receiving such complaints, a question of fact exists as to whether defendants had notice of a problem with the building's hot water system prior to plaintiff's injury.

Given our holding that the discovery delay was not unreasonable, the contact information for the boiler inspector provides a basis for further development of the record, and a conclusive determination that defendants are free from liability would presently be premature (*see Lindsey v H.B. Assoc., L.L.C.*, 24 AD3d 274 [2005]). Concur—Mazzarelli, J.P., Friedman, Nardelli, Gonzalez and Catterson, JJ.