FILED
COURT OF APPEALS
DIVISION II

2015 JUN 16 AM 8: 30

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| RENATO FIGURACION and JOLEEN FIGURACION, individually and the marital community comprised thereof and S.F., by and through her Parent/Guardian JOLEEN FIGURACION, a minor child, | No. 45779-2-II |
| Appellants, | |
| v. | |
| REMBRANDT REALTY TRUST; THE NEIDERS COMPANY, LLC, a Washington Corporation, | UNPUBLISHED OPINION |
| Respondents. | |

WORSWICK, J. — Renato and Joleen Figuracion appeal the trial court's order granting summary judgment dismissal in favor of Rembrandt Realty Trust (Rembrandt). The Figuracions sued Rembrandt, their former landlord, for damages resulting from burns their young daughter, S.F.,[1] obtained from their apartment's radiator. They argue that the trial court erred by (1) granting summary judgment dismissal against them, because genuine issues of fact remained regarding their tort claim; and (2) denying their motion for partial summary judgment, because no genuine issue of material fact existed regarding whether parental immunity applied to them. We affirm the summary judgment dismissal, holding as a matter of law that Rembrandt did not

---

[1] We refer to the minor children by their initials for privacy. We refer to Renato and Joleen Figuracion by their first names for clarity; no disrespect is intended.

breach any duties it owed to the Figuracions. We do not reach the Figuracions' appeal of the denial of their partial summary judgment motion.

FACTS

Renato and Joleen Figuracion had two young children, S.F. and C.F. The family signed a rental agreement with Rembrandt Realty Trust and moved into an apartment in the Rembrandt building. After the Figuracions took possession of the apartment, Rembrandt could not enter it without asking for permission. A steam radiator was located in the apartment's living room. When the family examined the apartment before moving in, Renato noticed the radiator and asked Rembrandt whether it could be covered. Rembrandt responded that the radiator did not get very hot, and it was against code to cover it. Instead, the Figuracions stacked boxes and other items around the radiator.

The radiator in the Figuracions' apartment had an on-and-off valve, but the Figuracions believed it did not work and might have been stuck in the on position. The radiator kept the apartment very warm. Rembrandt controlled the central boiler which supplied steam to the individual apartments' radiators, and Rembrandt turned the central system off during summer. The radiator was not in violation of any applicable statute or regulation.[2]

In April 2009, Joleen was at home with the children, who were watching television in the living room. Joleen left and went to the bathroom, which did not have a view of the living room. Joleen estimated that she was in the bathroom for about five minutes. She heard screaming and

---

[2] In their briefing, the Figuracions argued that the radiator violated applicable codes, but at oral argument they conceded that it did not. Searching the record and applicable codes, we could find no violations of applicable codes.

assumed the children were roughhousing, so she told them to settle down. The screaming continued, and Joleen rushed into the living room to find S.F. behind the radiator. S.F. had a large burn on her stomach. Joleen estimated that about two minutes elapsed between the sound of the first screams and when she found S.F. behind the radiator. After the accident, Joleen was not sure whether C.F. or the boxes had caused S.F. to become wedged behind the radiator.

The Figuracions sued Rembrandt and others[3] for breach of contract, violations of the Residential Landlord-Tenant Act of 1973 (RLTA), chapter 59.18 RCW, the implied warranty of habitability, and negligence. The complaint sought compensation for S.F.'s past and future medical treatment, physical and mental pain and suffering, past and future disabilities and disfigurement, lost capacity to enjoy life, damages to the parent/child relationship, and attorney fees and costs.

The Figuracions moved for partial summary judgment dismissing Rembrandt's affirmative defenses. Rembrandt cross-moved for summary judgment dismissal, arguing, among other things, that there was no evidence that Rembrandt breached any statutory or common law duties.

The Figuracions submitted a declaration from a medical expert who said that S.F.'s burns were primarily second degree burns, with some areas of third degree burns. The expert testified that third degree burns would occur in one second at 150 degrees Fahrenheit, or in roughly two minutes at 124 degrees Fahrenheit and would take longer at a lower heat.

---

[3] The initial complaint named numerous defendants. Later, several of these defendants obtained dismissal of all claims against them. For simplicity, we refer to all remaining defendants as "Rembrandt."

The Figuracions also supplied a declaration from a mechanical engineer with experience in heating systems. She declared that S.F.'s burn demonstrated that the temperature of the radiator was too high for consumer use. She also declared that the valve on the radiator was "painted open," meaning the Figuracions could not control it. In support of the notion that radiators can be dangerous, the engineer attached copies of web pages from the Centers for Disease Control reporting on home radiator burns among children.

The trial court considered both parties' summary judgment motions, then denied the Figuracions' partial summary judgment motion and granted Rembrandt's cross-motion for summary judgment dismissal. The Figuracions appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

We review summary judgment determinations de novo, engaging in the same inquiry as the trial court. *Powers v. W.B. Mobile Servs., Inc.*, 182 Wn.2d 159, 164, 339 P.3d 173 (2014). We consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Powers*, 182 Wn.2d at 164. A summary judgment is appropriate only where the pleadings, affidavits, depositions, and admissions on file show the absence of any genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Kelley v. Pierce County.*, 179 Wn. App. 566, 573, 319 P.3d 74, *review denied*, 180 Wn.2d 1019, 327 P.3d 55 (2014).

When engaging in statutory interpretation, we implement legislative intent by giving effect to the plain meaning of a statute. *Estate of Bunch v. McGraw Residential Ctr.*, 174 Wn.2d

425, 432, 275 P.3d 1119 (2012). We review issues of law de novo. *Rice v. Dow Chem. Co.*, 124 Wn.2d 205, 208, 875 P.2d 1213 (1994).

In a negligence case, the plaintiff must prove duty, breach, causation, and damages. *Nivens v. 7-11 Hoagy's Corner*, 133 Wn.2d 192, 198, 943 P.2d 286 (1997). Whether an actionable duty was owed to a plaintiff is a threshold determination and a question of law that we review de novo. *Munich v. Skagit Emergency Commc'n Cent.*, 175 Wn.2d 871, 877, 288 P.3d 328 (2012); *McKown v. Simon Prop. Grp., Inc.*, 182 Wn.2d 752, 762, 344 P.3d 661 (2015). The scope of a duty, by contrast, is ordinarily a question for the trier of fact. *McKown*, 182 Wn.2d at 762. Thus, we must determine whether any genuine issues of material fact exist regarding whether Rembrandt breached any duties it owed the Figuracions.

## II. LANDLORD'S DUTY TO TENANTS

The Figuracions argue that Rembrandt breached duties it owed to them under several legal theories. We disagree, holding as a matter of law that Rembrandt breached no duties it owed to the Figuracions. Thus, we affirm the summary judgment dismissal.

A tenant may bring a claim against a landlord for personal injuries under three theories, two of which are at issue here: (1) the RLTA, chapter 59.18 RCW, and (2) the common law. *Martini v. Post*, 178 Wn. App. 153, 167, 313 P.3d 473 (2013).

A.    *Figuracions Exclusively Controlled and Possessed the Radiator*

As an initial matter, the Figuracions argue under several theories that the radiator was in a common area or, relatedly, that Rembrandt exercised control over it or retained possession of it. We hold that the radiator was not in a common area, and the Figuracions exclusively controlled and possessed it. Thus, several of their claims fail.

No. 45779-2-II

As a general rule, a landlord is liable only for conditions in a common area, or for conditions over which the landlord retains control. Under the RLTA, Rembrandt must keep "common areas reasonably clean, sanitary, and safe from defects increasing the hazards of fire or accident." RCW 59.18.060(3). Under the common law, a landlord generally has no liability over noncommon areas once exclusive control has passed to the tenant. *Aspon v. Loomis*, 62 Wn. App. 818, 826, 816 P.2d 751 (1991). Under premises liability law, a landlord is liable for injury to tenants on land he "possess[es]," meaning common areas. *Pruitt v. Savage*, 128 Wn. App. 327, 331, 115 P.3d 1000 (2005); RESTATEMENT (SECOND) OF TORTS, §§ 328(E), 343, 343A (1965). And under *Restatement (Second) of Property: Landlord & Tenant* §§ 17.3 and 17.4 (1977), a landlord may be liable for conditions on a portion of leased premises that he retains in his control if the tenant is entitled to use it or if it is necessary to the safe use of the leased part.

Regarding all of these theories, we hold as a matter of law that the radiator was not in a common area and it was in the exclusive control and possession of the Figuracions. Regarding the RLTA, RCW 59.18.060(3), we give effect to the plain meaning of the term "common area[]" to mean an area that all tenants either may use or own in common. *See Estate of Bunch*, 174 Wn.2d at 432; BLACK'S LAW DICTIONARY 332 (10th ed. 2014). The Figuracions' radiator does not fit the definition of "common area," because no evidence suggests other tenants used or owned it.

We also hold that exclusive possession and control of the radiator upon which S.F. was injured had passed to the Figuracions, regardless of the fact that Rembrandt controlled the central boiler. Thus, the *Restatement (Second) of Torts* §§ 328(E), 343, 343A (1965) and the *Restatement (Second) of Property: Landlord & Tenant* §§ 17.3 and 17.4 (1977) do not rescue

6

their claims against Rembrandt. S.F. was injured in the Figuracions' apartment, not on the central boiler. And the Figuracions possessed their apartment: it is uncontested that Rembrandt was required to obtain the Figuracions' permission to enter their apartment. The Figuracions rented their apartment without any apparent limitation in the rental agreement. Finally, there are no facts here to suggest the Figuracions were entitled to use the central boiler over which Rembrandt retained control. Thus, these arguments fail.

B.     *Duties Under the RLTA*

The Figuracions argue that Rembrandt breached its duty to make the radiator safe under the RLTA, chapter 59.18 RCW. We disagree.

The RLTA provides that landlords must comply with a list of 15 enumerated duties. RCW 59.18.060. As relevant to this appeal, these duties include the following:

> (1) Maintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition endangers or impairs the health or safety of the tenant;
>
> . . . .
> (3) Keep any shared or common areas reasonably clean, sanitary, and safe from defects increasing the hazards of fire or accident;
>
> . . . .
> (8) Maintain all electrical, plumbing, heating, and other facilities and appliances supplied by him or her in reasonably good working order;
>
> . . . .
> (11) Provide facilities adequate to supply heat and water and hot water as reasonably required by the tenant.

The RLTA's duties can be a basis for a tenant's personal injury tort claim. *Tucker v. Hayford*, 118 Wn. App. 246, 257-58, 75 P.3d 980 (2003).

A landlord's liability under the RLTA extends only to those duties specifically enumerated in RCW 59.18.060; the statute does not create a general duty to "'keep the premises

fit for human habitation.'" *Lian v. Stalick*, 106 Wn. App. 811, 816, 25 P.3d 467 (2001) (*Lian* I) (quoting *Aspon*, 62 Wn. App. at 824). As a matter of law, we hold that Rembrandt did not breach any of these duties.

### 1. *RLTA Subsection 1: Compliance with Applicable Code*

Under subsection 1, Rembrandt had a duty to

[m]aintain the premises to substantially comply with any applicable code, statute, ordinance, or regulation governing their maintenance or operation, which the legislative body enacting the applicable code, statute, ordinance or regulation could enforce as to the premises rented if such condition endangers or impairs the health or safety of the tenant.

RCW 59.18.060(1). At oral argument in this case, counsel for the Figuracions conceded that radiator covers are "not required by any statute, ordinance, or otherwise," and we could find no such requirement. Wash. Court of Appeals oral argument, *Figuracion v. Rembrandt Realty Trust*, No. 45779-2-II (Apr. 6, 2015), at 2 min., 55 sec. through 3 min., 1 sec. Thus, their claim under subsection (1) fails as a matter of law.

### 2. *RLTA Subsection 3: Common Areas*

Under subsection 3, Rembrandt must keep "common areas reasonably clean, sanitary, and safe from defects increasing the hazards of fire or accident." RCW 59.18.060(3). The Figuracions appear to argue that the radiator was a "common area" because Rembrandt retained partial control of the heating system. Br. of Appellant at 33. Above, we hold that the radiator was not in a common area. The Figuracions' claim under subsection 3 fails.

### 3. *RLTA Subsection 8: Maintenance of Facilities and Appliances*

Under subsection 8, Rembrandt must "[m]aintain all electrical, plumbing, heating, and other facilities and appliances supplied by him or her in reasonably good working order." RCW

59.18.060(8). The Figuracions argue that the radiator was not in reasonably good working order if it was capable of severely burning a child. But the plain meaning of the terms "reasonably good working order," when describing the proper maintenance of "electrical, plumbing, heating, and other facilities and appliances," is that those appliances should operate correctly and perform the tasks they are designed to do. This section requires appliances to work (i.e., a radiator must heat the room). This radiator heated the room, and the Figuracions have not presented facts showing that it was defective. We hold as a matter of law that this radiator was in reasonably good working order, and the Figuracions' argument fails.

4. *RLTA Subsection 11: Supplying Heat*

Under subsection 11, Rembrandt had to "provide facilities adequate to supply heat . . . as reasonably required by the tenant." All the evidence establishes that Rembrandt provided heat; Joleen's deposition establishes that the apartment was very warm. The Figuracions' argument fails.

5. *Extraordinary Remedies Section Inapplicable*

The Figuracions also argue that RCW 59.18.115(2)(a), which provides extraordinary remedies for housing violative of the RLTA, demonstrates that a hazardous radiator violates the RLTA. This argument is without merit. RCW 59.18.115(2)(a) provides: "If a landlord fails to fulfill any substantial obligation imposed by RCW 59.18.060 that substantially endangers or impairs the health or safety of a tenant, including . . . (v) heating or ventilation systems that are not functional or are hazardous . . . the tenant shall give notice" to the landlord. Then, if the landlord fails to rectify the situation, the tenant may inform the local government and, if the local government agrees that the landlord has failed to rectify a condition that violates the RLTA, the

9

tenant may cease paying rent. RCW 59.18.115. By its plain terms, RCW 59.18.115(2)(a) applies to violations of 59.18.060. Thus, any violation of RCW 59.18.115 must begin as a violation of RCW 59.18.060. And, as discussed above, the radiator at issue here did not violate RCW 59.18.060. The Figuracions' argument fails.

Thus, none of the enumerated duties in RCW 59.18.060 required Rembrandt to make the radiator in the Figuracions' apartment safe. We hold that Rembrandt did not breach any duties it owed to the Figuracions under the RLTA.

C.      *Common Law Landlord Liability*

The Figuracions also argue that Rembrandt breached various duties it owed to them under the common law. We hold as a matter of law that Rembrandt breached no duties it owed to the Figuracions under any common law theory.

1. *Liability for Latent Defects*

The Figuracions argue that Rembrandt owed them a duty under the common law for failing to warn them of a latent defect. This argument fails.

A landlord is liable to a tenant for damages caused by a concealed, dangerous condition known to the landlord that existed at the beginning of the leasehold. *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994). Here, there is no evidence to suggest that the radiator was defective, and, thus, it cannot be a latent defect. Thus, Rembrandt breached no duty to warn the Figuracions of the radiator's condition.

2. Restatement (Second) of Property: Landlord & Tenant § 17.6 *and Common Law Implied Warranty of Habitability*

The Figuracions also argue that Rembrandt breached its duty under the common law implied warranty of habitability. This exception to the common law rule barring landlord

liability for open and obvious dangers is set forth in the *Restatement (Second) of Property: Landlord & Tenant* § 17.6 (1977). We note that the Figuracions did not cite, and we could not find, any case in any jurisdiction in which a court held a landlord liable under section 17.6 for a tenant's burns obtained from a properly functioning radiator. We hold that Rembrandt did not breach the common law implied warranty of habitability.

*Restatement (Second) of Property: Landlord & Tenant* § 17.6 (1977) states:

> A landlord is subject to liability for physical harm caused to the tenant and others upon the leased property with the consent of the tenant or his subtenant by a dangerous condition existing before or arising after the tenant has taken possession, if he has failed to exercise reasonable care to repair the condition and the existence of the condition is in violation of:
> (1) an implied warranty of habitability; or
> (2) a duty created by statute or administrative regulation.

This rule applies even when the dangerous condition occurs in an area of the premises under the tenant's control. *Lian v. Stalick*, 115 Wn. App. 590, 594, 62 P.3d 933 (2003) (*Lian* II). To establish liability under section 17.6, the tenant must show that (1) the condition was dangerous, (2) the landlord was or should have been aware of the condition and failed to exercise ordinary care to repair the condition, and (3) the existence of the condition was a violation of an implied warranty of habitability or a duty created by statute or regulation. *Lian* II, 115 Wn. App. at 595.

Section 17.6 has been adopted in Washington. *Martini*, 178 Wn. App. at 170-71. Under section 17.6, the Figuracions must show that Rembrandt breached a duty of care owed to them under an implied warranty of habitability or a statute or regulation. But as discussed above, no actionable duty here arises out of a statute or regulation. Thus, for the Figuracions to prevail under section 17.6, Rembrandt must have breached a duty arising from either the RLTA's

implied warranty of habitability or the common law implied warranty of habitability. Rembrandt breached neither.

### a. *RLTA Implied Warranty of Habitability*

While the RLTA includes an implied warranty of habitability, it does not create a duty on the landlord's part to keep the premises safe or fit for human habitation. *Lian* I, 106 Wn. App. at 816; *Aspon*, 62 Wn. App. at 825-26. Thus, the Figuracions may rely only on the enumerated provisions of RCW 59.18.060 to show any breach of the RLTA's implied warranty of habitability. And as stated above, the Figuracions fail to show that Rembrandt breached its duties to them under any of the RLTA's enumerated provisions. Thus, as a matter of law, Rembrandt did not breach the RLTA's implied warranty of habitability.

### b. *Common Law Implied Warranty of Habitability*

In 1973, our Supreme Court declared that there exists an implied warranty of habitability in all residential rental agreements. *Foisy v. Wyman*, 83 Wn.2d 22, 28, 515 P.2d 160 (1973). Division One of this court recently concluded that the implied warranty of habitability recognized in *Foisy* can serve as a basis for legal action against a landlord under the common law without regard to the RLTA. *Landis & Landis Constr., LLC v. Nation*, 171 Wn. App. 157, 163, 286 P.3d 979 (2012), *review denied*, 177 Wn.2d 1003 (2013); *see also Aspon*, 62 Wn. App. at 825. We agree that the RLTA did not supersede common law remedies, so there remains an implied warranty of habitability independent of the RLTA.

The leading Supreme Court case makes clear that breach of this warranty must be determined on a case-by-case basis. *Atherton Condo. Apartment-Owners Ass'n Bd. of Directors v. Blume Dev. Co.*, 115 Wn.2d 506, 522, 799 P.2d 250 (1990). The appropriate standard of

habitability is whether the conditions present a substantial risk of future danger. *Landis*, 171 Wn. App. at 166-67. The warranty does not extend to "'mere defects in workmanship'" or require perfection, nor does it extend to "trivial or aesthetic concerns." *Atherton*, 115 Wn.2d at 522 (quoting *Stuart v. Coldwell Banker Commercial Grp., Inc.*, 109 Wn.2d 406, 417, 745 P.2d 1284 (1987)); *Landis*, 171 Wn. App. at 167.

But despite this rule of case-by-case evaluation of the implied warranty of habitability, it appears courts in Washington have adopted section 17.6 only to the extent that any violation of an implied warranty of habitability stems from a codified law. In adopting section 17.6 in *Martini*, we wrote in dicta that

> the rule in section 17.6 is based on the assumption that a duty created by a statute or regulation "'represents a legislative determination of the standard of conduct required of the landlord" and that tort liability of the landlord for breaching his duty "tends to increase the likelihood that the will of the legislature as expressed in the statute or regulation will be effectuated.'"

178 Wn. App. at 171 (quoting RESTATEMENT (SECOND) OF PROPERTY § 17.6 cmt a (1977)). In *Martini*, liability arose from a faulty window which violated Tacoma Municipal Code 2.01.070 and RCW 59.18.060(1) and (5). *Martini*, 178 Wn. App. at 171. Furthermore, the parties have not provided any case, and we have found none in Washington, which has found a violation of the implied warranty of habitability where there was no evidence of a defective or legally noncompliant condition. We decline to extend section 17.6 in this case, where it is undisputed that the radiator was not defective and violated no applicable statutes or regulations.

Limiting the application of section 17.6 in this case, where the radiator at issue was compliant with relevant law and was not defective, serves important policy considerations. As Rembrandt argues, to hold that an uncovered radiator may have violated the implied warranty of

habitability despite being neither defective nor out of compliance with any law would open the door to many common conditions being potential violations. Were Rembrandt liable for not covering a working radiator, by the same logic landlords may be liable for providing stairs that people may fall down, providing furniture with uncovered sharp corners, or failing to install covers over electrical outlets. Tenants may be injured by these objects in their apartments in the ordinary course of events. We decline to hold that the implied warranty of habitability makes the landlord a guarantor of safety against such dangers arising from nondefective, legally compliant objects.

Further, our search in Washington and other jurisdictions revealed no case in which a court has found a landlord liable where a tenant was burned on a nondefective steam radiator. *See Hubbard v. Chicago Hous. Auth.*, 138 Ill. App. 3d 1013, 1016, 487 N.E.2d 20, 93 Ill. Dec. 20 (1985) ("To interpret the ordinance [requiring landlords to supply heating] to find a violation, as plaintiffs suggest, would prevent the use of any heating unit which would be capable of causing burns through prolonged contact. Such a construction of this ordinance would impose too heavy a burden on the defendant here, as well as on all landlords."); *Loving v. Chicago Hous. Auth.*, 203 Ill. App. 3d 205, 208, 560 N.E.2d 1129, 148 Ill. Dec. 532 (1990) (holding that the landlord was not liable for injury resulting from contact with an uninsulated steam pipe); *Dargie v. E. End Bolders Club*, 346 Ill. App. 480, 489-90, 105 N.E.2d 537 (Ill. App. Ct. 1952) ("The radiator was hot. It was being used for the only purpose for which it was intended. There was no escaping steam. The radiator was in no way defective. Its installation and location were in accordance with approved and standard practice. It was no more dangerous than any heating device."); *Rivera v. Nelson Realty, LLC*, 7 N.Y.3d 530, 535-36, 858 N.E.2d 1127 (2006)

14

(holding that landlord did not breach a New York statutory duty to maintain premises in good repair by refusing to cover a steam radiator); *Della Porta v. Roma*, 370 Pa. 593, 596-98, 88 A.2d 911 (1952) (citations omitted) ("There is no allegation that the radiators were defective in any way—only that they were hot. . . . Whatever risk is attendant upon keeping a radiator hot is not an 'unreasonable risk' but is a necessary concomitant to the heating function which it serves and is justified by its utility.").

Thus, we hold that because the Figuracions have failed to show that the radiator was out of compliance with any applicable law or that it was defective in any way, Rembrandt did not breach the common law implied warranty of habitability.

In conclusion, we hold as a matter of law that Rembrandt did not breach any duty it owed the Figuracions under section 17.6. Even taking all inferences in the light most favorable to the Figuracions, they have failed to show that there is a genuine issue of material fact about whether Rembrandt breached any duties it owed to them. Because they have not shown that the radiator was defective, that it was in a common area, nor that it violated any applicable statute or regulation, we hold as a matter of law that Rembrandt breached no duties.

Because we affirm the summary judgment dismissal on the grounds that there is no genuine issue of material fact about whether Rembrandt breached any duties it owed to the Figuracions, we decline to reach the parties' remaining arguments about superseding and intervening causes, and the Figuracions' appeal of the denial of their partial summary judgment motion.

No. 45779-2-II

ATTORNEY FEES

Rembrandt requests attorney fees pursuant to RAP 18.1 and 18.9. We deny the request. RAP 18.1 allows us to award attorney fees to a party entitled to them under applicable law. No applicable law entitles Rembrandt to attorney fees. And we hold that Rembrandt is not entitled to attorney fees under 18.9 for defending this appeal, because the Figuracions' appeal is not so devoid of merit as to be frivolous.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Johanson, C.J.

Melnick, J.

16