◼ TYRESE WILLIAMS, an Infant, by His Mother and Natural Guardian, YVONNE GRAHAM, et al., Respondents, v JEFFMAR MANAGEMENT CORPORATION, Appellant, et al., Defendant. (And Other Actions.) [820 NYS2d 212]—

Order, Supreme Court, Bronx County (Lucy Billings, J.), entered November 4, 2005, which denied defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

This action is brought on behalf of Tyrese Williams, an infant, against his landlord, for second- and third-degree burn injuries he suffered on June 25, 2002, when he was two years old, caused by excessively hot bath water. On the day of the incident, his mother, Yvonne Graham, told the investigating detective that she had allowed Tyrese to get into the bathtub while the water was running, and after he sat there for a minute, he said the water was hot, and she took him out, at which time she found that his feet were white and called 911. The affidavit she submitted in the context of this action states that she left Tyrese

unsupervised as the water was running into the tub, and ran back in after approximately one minute when she heard him scream loudly, and removed him from the tub. Tyrese was found to have sustained second- and third-degree burns on his feet, ankles and buttocks.

The investigating detective measured the hot water temperature running into the bath later that day, finding that after one minute the bathwater temperature was 96 degrees, and after two minutes it was 124 degrees. The physician who testified before the grand jury in the prosecution of Ms. Graham stated that 124-degree water would cause a burn to a child's skin in perhaps one minute. But based upon the nature and shape of the burns sustained by Tyrese, particularly the well-delineated burn line and absence of splash burns, he believed that the water temperature had been much hotter than 124 degrees, and that Tyrese, rather than sitting still in it, had been dipped into it so as to fully immerse his feet and his buttocks, while leaving the rest of his skin unharmed. The physician indicated that water at 140 degrees would have taken one to two seconds to burn, while if it was 130 degrees, it would have taken closer to 30 seconds.

The Administration for Children's Services investigated, concluding that Ms. Graham had failed to supervise plaintiff while he was in the tub, and was not careful with the hot water, which can unexpectedly turn very hot.

The mother pleaded guilty to the crime of assault in the second degree in relation to the incident, stating at her plea allocution that she knew the water was hot in her building but let her son get into the tub. However, on behalf of her son, she brought this negligence action against the landlord.

In support of its motion for summary judgment, defendant landlord relied upon Ms. Graham's conviction and the physician's testimony as to how the incident had occurred, contending that Ms. Graham's criminal conduct was the sole proximate cause of her son's injuries. Defendant further argued that no defective condition existed with respect to the building's hot water supply, and that, in any event, it lacked notice of any excessively hot water condition.

Defendant's motion should have been granted. Although the mother's plea of guilty to assault in the second degree does not necessarily collaterally estop plaintiff from asserting defendant's negligence (cf. *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664-665 [1990]), and the nature of the conduct she admitted to is not as a matter of law so "extraordinary under the circumstances" as to be a superseding event that broke the

causal link between defendant's alleged negligence and plaintiff's injuries (*see Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]), nevertheless, the record reflects a lack of support for the negligence claim against the landlord.

Plaintiff's claim against defendant landlord depends upon the assertion that hot water piped into apartments must not be more than 120 degrees, and that setting the hot water mixing valve at 140 degrees, and permitting the hot water sent to the apartments to exceed that setting, constitutes negligence. Yet, there is only plaintiff's expert's bare assertion that "absent negligence, water above 120 degrees Fahrenheit should not have been discharged into the hot water system and apartments." No statute or regulation imposing this claimed 120-degree maximum standard is cited. While Administrative Code of the City of New York § 27-2031 does set forth a standard for the hot water supplied to dwelling units in multiple dwellings, contrary to plaintiff's assertion that such hot water setting should be a *maximum* of 120 degrees, this Administrative Code provision actually directs that (between 6:00 A.M. and midnight) such dwelling units must be supplied with hot water at a constant *minimum* temperature of 120 degrees Fahrenheit. Nor does Building Code Reference Standard RS-16 § P107.6 (i) (*see* Administrative Code, tit 27, Appendix), upon which the motion court relied, support plaintiff's claim of negligence. This provision, which directs that "[w]ater temperature control valves shall be equipped with high-limit stops adjusted to a maximum hot water setting of 120 degrees Fahrenheit," by its terms applies to units' individual bath and shower valves. It has no applicability to the type of hot water mixing valve at issue here, which is located at the boiler and controls the temperature of the hot water circulated throughout the building. Defendant's expert indicates that plaintiff's apartment had no individual bath or shower valve to which this rule could be applied, and the owner of a building built in 1931 is not required to install such individual valves pursuant to a rule made effective in 1997.

In view of the foregoing, plaintiff's evidence that the hot water mixing valve was set at 140 degrees, and that the actual temperature of the water at the valve sometimes ranged above that setting, does not establish a statutory or regulatory violation by defendant.

Nor would a hot water temperature setting of 140 degrees violate defendant's common-law standard of care, which requires the maintenance of reasonably safe conditions in the building (*see Basso v Miller*, 40 NY2d 233, 241 [1976]). Nothing in plaintiff's submissions permits a finding that a building's hot

water mixing valve must be set at a maximum of 120 degrees, or that a maximum setting of 140 degrees is unsafe. A building's maximum hot water is not intended to be at a temperature appropriate for bathing. Indeed, as defendant's expert pointed out, keeping hot water in excess of 120 degrees (as required by Administrative Code § 27-2031) aids in killing certain microorganisms when washing dishes or clothing.

Moreover, a certain amount of temperature fluctuation must be expected. Just as it would be unreasonable for a tenant to assume that the temperature of water emerging from the hot water tap alone is safe for bathing, so would it be unreasonable to assume that the water's temperature upon first turning the taps will remain unchanged a minute or two later. People using hot water, especially when bathing infants and toddlers, must be expected to monitor the mixture of hot and cold water to ensure a temperature that is safe for bathing. A landlord cannot be required to adjust the hot water temperature in order to protect children from adults who fail to do so. Concur—Mazzarelli, J.P., Saxe, Friedman, Sullivan and Sweeny, JJ.