■ SAPPHIRE SIMMONS, an Infant, by Her Mother and Natural Guardian, ROSEMARY SIMMONS, et al., Respondents, v VITO SACCHETTI et al., Appellants, and AMBASSADOR FUEL AND OIL BURNER CORP. et al., Appellants-Respondents, et al., Defendant. [885 NYS2d 257]—

Orders, Supreme Court, Bronx County (Dominic R. Massaro, J.), entered October 20 and 21, 2008, which, in an action for personal injury to an infant, denied respective motions by defendants building owner and management company, and by defendant boiler service contractor, for summary judgment dismissing the complaint and all cross claims against them, reversed, on the law, without costs, the motions granted, and the complaint and all cross claims against those defendants dismissed. The Clerk is directed to enter judgment accordingly.

This action arises from an accident on December 15, 2005 at 2513 Tratman Avenue in the Bronx, where plaintiff Sapphire Simmons, then 17 months old, was injured when she fell into a bathtub containing scalding hot water. The building complex was owned by defendant Vito Sacchetti, and managed by his son Michael, an employee of defendant TMS Management Company.

Defendant Ambassador Fuel and Oil Burner Corp. had an oral contract with Sacchetti. Sacchetti claims that Ambassador's obligations included maintaining and repairing the building's hot water system, while Ambassador asserts its only responsibilities were to supply fuel oil and conduct annual inspections of the boiler sufficient to satisfy New York City Building Department requirements. The complaint alleged that Sapphire's injuries were caused by defendants' negligence in failing to properly maintain the water system in the building.

At her deposition, Rosemary Simmons, Sapphire's mother, testified that she was in bed with Sapphire, watching televison, when she heard the steam coming up in the apartment. She told her 13-year-old son, Giovanni, that it was time for him to take a bath. Giovanni came into the room to get his underwear and left. A few seconds after he left, Sapphire got off the bed

and left the room. Rosemary was still watching television. A few minutes later, she heard Sapphire scream. By the time she got to the bathroom, Giovanni was holding Sapphire. Sapphire's legs and the front of her body were wet, and there was steam coming from her clothing. Rosemary yanked off Sapphire's clothes and saw that skin was coming off as well. She told her 18-year-old son, Anthony, to call 911.

Giovanni testified that Sapphire went to follow him, but he told her that he had to a take a shower, and he asked Anthony to watch her. Giovanni went to the bathroom and turned on the hot water only. He realized he had forgotten his shirt so he went back to his bedroom, but did not close the bathroom door and left the water running. At that time, Sapphire was in another bedroom with Anthony. Two minutes later, he heard Sapphire crying. His mother asked him to check on her, so he went into Anthony's room. When he did not see her, he knew she was in the bathroom. He heard the water still running in the tub. A minute later, he saw Sapphire in the tub with her body close to the faucet and he picked her up. Approximately five minutes had elapsed from the time he turned on the water until the time he saw Sapphire in the tub.

Wanda Baez, plaintiffs' neighbor and a tenant of the building, testified that her child had been burned by the hot water in the building in 1998. Another tenant, Arleen Delgado, testified that she had complained to building management about the water temperature in 2003, and that her daughter had been burned when she was taking a bath. Griselle Gonzalvo, also a tenant, testified that before the accident she had complained many times about the water temperature.

The Sacchetti defendants and Ambassador moved separately for summary judgment dismissing the complaint. The court denied both motions, finding issues of fact as to the malfunctioning of the water system and as to Ambassador's responsibilities with regard to the system.

It is undisputed that this accident occurred when the unattended, 17-month-old child was scalded after getting or falling into a bathtub after her brother had turned on hot water only, and while her mother was in another room. As this Court has previously stated, "A landlord cannot be required to adjust the hot water temperature in order to protect children from adults who fail to do so" (*Williams v Jeffmar Mgt. Corp.*, 31 AD3d 344, 347 [2006], *lv denied* 7 NY3d 718 [2006]). "People using hot water . . . must be expected to monitor the mixture of hot and cold water to ensure a temperature that is safe for bathing" (*id.*).

The dissent's attempt to distinguish *Williams* by stating that this is not a case of a negligent mother leaving an infant alone in a tub is perplexing. The mother in this case concededly left her infant unsupervised, and, as a result, the child was injured when she entered or fell into a bathtub the mother knew was being used. The older brother's act of leaving the bathroom did not negate the mother's negligence, or transpose liability to the landlord.

Even if the dissent's characterization of the mother's conduct were accurate, the result would be the same. There is no prescribed maximum temperature under the Administrative Code of the City of New York for the water that is supplied to an individual apartment (*id*. at 346). For that reason, we decline to follow the analysis of the dissent, even if New York City Building Code Reference Standard RS 16 § P107.26 (b) (Administrative Code, tit 27, ch 1, Appendix) is applicable.

Consequently, we cannot find that there was any negligence on the part of either the building defendants or the fuel company that could be construed as the proximate cause of the infant's injuries. Concur—Friedman, J.P., Sweeny, Nardelli and Richter, JJ.

Acosta, J., dissents in a memorandum as follows: I disagree with the majority and would vote to affirm inasmuch as there are issues of fact preventing summary dismissal of the complaint. With respect to the building defendants, there are issues of fact as to whether they violated their duty to ensure that the water temperature was at a level where it would not cause burns (*see e.g. Rosencrans v Kiselak*, 52 AD3d 492 [2008]; *Carlos v 395 E. 151st St., LLC*, 41 AD3d 193, 195-196 [2007]; *Lindsey v H.B. Assoc., L.L.C.*, 24 AD3d 274 [2005]; *Greene v Simmons*, 13 AD3d 266 [2004]; *Parker v New York City Hous. Auth.*, 203 AD2d 345 [1994]). That duty is part of the responsibility of an owner of residential property to maintain the premises in a reasonably safe condition (*Rosencrans*, 52 AD3d at 492). Such issues are raised by evidence that, inter alia, 20 days after the accident, the water temperature in the apartment was measured at between 151 and 186 degrees; water temperature of 150 degrees will instantly scald an infant's skin; the building's hot water system did not have a temperature relief valve, in violation of New York City Building Code Reference Standard RS 16 § P107.26 (b) (Administrative Code, tit 27, ch 1, Appendix), which would have prevented excessively hot water from flowing to the infant's apartment; the boiler contractor had previously issued a violation notice to the building defendants based on the absence of a temperature relief valve in

a boiler that serviced other buildings in the complex, indicating that the building defendants were on notice that such a valve was required; and other tenants had complained to building management about excessively hot water.

Issues of fact also exist as to whether the boiler contractor launched a force or instrument for harm, rendering it liable in tort to third persons (*see Espinal v Melville Snow Contrs.*, 98 NY2d 136, 140 [2002]). Such issues are raised by evidence that, inter alia, the building defendants relied on the contractor to inspect the hot water system as well as the boiler system, and to report any problems (*see Gottlieb v 31 Gramercy Park S. Owners Corp.*, 276 AD2d 417 [2000] [issues of fact exist as to extent of defendant's obligation to inspect and/or repair boiler and "accessories"]), and the contractor's issuance of a violation for lack of a temperature relief valve on another boiler in the complex, tending to show that a check for this valve was part of its inspection process, and that reasonable care in the performance of its annual inspections would have resulted in its discovery of the missing valve and issuance of a citation.

Summary judgment is also inappropriate based on uncontested evidence that the infant was injured after her older brother, intending to take a bath, had turned on only the hot water and briefly left the bathroom. Whether the brother's act of turning on only the hot water was a superseding cause is a question of fact for the jury (*Parker*, 203 AD2d at 346; *see generally Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315 [1980]).

Finally, *Williams v Jeffmar Mgt. Corp.* (31 AD3d 344, 347 [2006], *lv denied* 7 NY3d 718 [2006]), relied on by the majority for its proposition that a "landlord cannot be required to adjust the hot water temperature in order to protect children from adults who fail to do so," is inapposite to the facts of this case. Unlike *Williams*, where the mother, who left the infant child unattended in the tub, pleaded guilty to assault in the second degree, Administration for Children's Services found the abuse and neglect allegations against the mother in the instant case to be unfounded. This is not a case of a negligent mother leaving an infant alone in a tub. Rather, this was an accident where the older brother left the bathroom momentarily. Moreover, *Williams* is distinguishable because in that case "[n]othing in plaintiff's submissions permit[ted] a finding . . . that a maximum setting of 140 degrees [wa]s unsafe" (31 AD3d at 346-347). Here, however, plaintiffs' expert found soon after the incident that the water emanating from the hot water tap was in excess of 150 degrees (and as high as 186 degrees), and stated that water temperature of 150 degrees will instantly scald an

infant's skin. And, as noted above, the building defendants in the present case knew that the hot water problem could result in injury since they had received numerous complaints from tenants as well as the aforementioned violation issued by their own contractor. Accordingly, I would affirm.