McIntyre v Bradford White Corp. (2023 NY Slip Op 06293)

McIntyre v Bradford White Corp.

2023 NY Slip Op 06293

Decided on December 7, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 7, 2023

536062
[*1]Tonie L. McIntyre, Individually and as Guardian of T.M., an Infant, Appellant,
v
Bradford White Corporation et al., Defendants, and Brookline Housing Associates, LLC, Doing Business as Bridgewater Apartments, et al., Respondents.

Calendar Date:October 17, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

LaFave, Wein & Frament, PLLC, Albany (Paul H. Wein of counsel), for appellant.
Thorn Gershon Tymann and Bonanni, LLP, Albany (Matthew H. McNamara of counsel), for respondents.

Lynch, J.
Appeal from an order of the Supreme Court (Martin D. Auffredou, J.), entered July 15, 2022 in Washington County, which, among other things, granted certain defendants' motion for summary judgment dismissing the complaint against them.
In September 2011, plaintiff's infant child was burned by hot water while being bathed in the kitchen sink of plaintiff's rented apartment. According to plaintiff, she turned on the hot and cold water in the kitchen sink, ran her hand under the faucet to confirm the appropriateness of the temperature, and then positioned the infant under the stream. Although the infant was initially fine, when plaintiff turned around to grab a washcloth, she heard the infant scream, explaining that there was an unexpected surge of hot water from the faucet, causing the child to suffer second and third degree burns. Plaintiff, individually and as guardian of the child, commenced this action asserting causes of action for negligence, strict products liability and premises liability. Plaintiff's theory of liability was that an anti-scalding tempering valve (hereinafter the mixing valve) — which was installed on the water heater servicing her apartment in the late 1990s — malfunctioned due to the internal build-up of scale. The hot water heater and mixing valve were located in a locked closet within plaintiff's apartment to which she did not have access.
Following joinder of issue and discovery, the corporate entities that owned and maintained the subject premises (hereinafter collectively referred to as defendants) moved for summary judgment dismissing the complaint.[FN1] They alleged, as relevant here, that they did not create the alleged dangerous condition, had no actual or constructive notice thereof, and owed no affirmative duty to perform routine inspections of the mixing valve. Plaintiff opposed the motion and cross-moved for summary judgment on liability, conceding that defendants lacked actual notice of the alleged dangerous condition, but arguing that there was a "compelling [argument for] constructive notice" based on the defendant owner's affirmative duty to periodically inspect the mixing valve for potential defects. Plaintiff also argued that the doctrine of res ipsa loquitor applied and established defendants' negligence as a matter of law. Supreme Court granted defendants' motion and denied plaintiff's cross-motion, finding that plaintiff failed to "make out a prima facie case that any breach of a duty owed to the infant was the cause of his injuries" because her theory of liability — that the mixing valve malfunctioned due to scale accumulation — was speculative and not supported by an evidentiary basis. The court further concluded that the doctrine of res ipsa loquitor did not apply because the event which produced the infant's injuries was not caused by an instrumentality within defendants' exclusive control, emphasizing that "the temperature of the water flowing from the kitchen sink faucet was partly within [plaintiff's[*2]] control." Plaintiff appeals.
We affirm. A landowner must maintain its property in a reasonably safe condition under the circumstances (see Basso v Miller, 40 NY2d 233, 241 [1976]). As between a landlord and tenant, "a landlord is not liable to a tenant for dangerous conditions on the leased premises, unless a duty to repair the premises is imposed by statute, by regulation or by contract" (Rivera v Nelson Realty, LLC, 7 NY3d 530, 534 [2006]). There is no dispute here that plaintiff's lease agreement expressly provided that the landlord would repair the hot water equipment in her apartment upon notice of a defect and reserved the right to enter the premises for that purpose. To hold defendants liable in negligence for the child's injuries under these circumstances, plaintiff was required to establish the existence of a dangerous condition on the premises, that defendants had notice of the dangerous condition and were given a reasonable opportunity to repair it, and that their failure to do so proximately caused the alleged injuries (see Litwack v Plaza Realty Investors, Inc., 11 NY3d 820, 821 [2008]). To prevail on their motion for summary judgment in this context, defendants were required to "demonstrate that they maintained the property in question in a reasonably safe condition and neither created the allegedly dangerous condition existing thereon nor had actual or constructive notice thereof" (Murphy v Hometown Real Estate, 132 AD3d 1126, 1127 [3d Dept 2015] [internal quotation marks, brackets, ellipsis and citations omitted]; see Ensher v Charlton, 64 AD3d 1032, 1033 [3d Dept 2009]).
Even accepting plaintiff's theory that the unexpected surge of hot water resulted from a mixing valve malfunction due to the internal accumulation of scale (see generally Vega v Restani Const. Corp., 18 NY3d 499, 503 [2012]), defendants conclusively established that they did not breach any duty owed. The record demonstrates that, in accordance with the manufacturer's specifications set forth in the hot water heater manual, defendants installed a mixing valve on the heater in the late 1990s, which was set to lower the hot water temperature to 120 degrees Fahrenheit in the kitchen sink. Plaintiff does not dispute that such a setting was appropriate, instead maintaining that the mixing valve did not function as intended at the time of the incident. Plaintiff had never before complained about a hot water temperature surge and there is no evidence that anyone else had done so. Nor can defendants be charged with constructive notice, which may be imputed when the "defect [was] visible and apparent and . . . exist[ed] for a sufficient length of time prior to the accident to permit [the defendants'] employees to discover and remedy it" (Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]).
Here, defendants' expert explained that a visual inspection of the mixing valve did not reveal any scale buildup — an opinion that plaintiff's experts did not refute [*3]and confirmed by a photograph of the mixing valve included in the record.[FN2] That the mixing valve's instruction manual warned of the potential for scale accumulation under hard water conditions, which could potentially affect its operation, "established, at best, a 'general awareness' " by defendants that such possibility existed, "but such information is insufficient as a matter of law to raise a triable issue of fact regarding . . . constructive notice" (Faville v County of Albany, 163 AD3d 1297, 1299 [3d Dept 2018]; see Flores v Langsam Prop. Servs. Corp., 63 AD3d 502, 503 [1st Dept 2009], affd 13 NY3d 811 [2009]; Hayes v Riverbend Hous. Co., Inc., 40 AD3d 500, 500 [1st Dept 2007], lv denied 9 NY3d 809 [2007]; Chorostecka v Kaczor, 6 AD3d 643, 644 [2d Dept 2004]).
The issue distills to whether the defendant owner had a duty to inspect the mixing valve before the subject incident, but failed to do so. If so, constructive notice of the defect would be imputed to defendants (see Personius v Mann, 20 AD3d 616, 619 [3d Dept 2005], affd in relevant part 5 NY3d 857 [2005]). Plaintiff maintains that defendants had an affirmative duty to engage in periodic inspection or testing of the mixing valve, relying on sections 504.1 and 505.4 of the 2010 Property Maintenance Code of New York State (hereinafter the Code). Those provisions required landlords to install plumbing fixtures and water heating facilities in residential units and maintain them in a safe condition. Coupling this maintenance obligation with the general proposition that "[t]he risk reasonably to be perceived defines the duty to be obeyed" (Palsgraf v Long Is. R.R. Co., 248 NY 339, 344 [1928]), plaintiff reasons that defendants had an affirmative duty to "set up a schedule to check each of the mixing valves in the apartment complex for the buildup of scale."
We are unpersuaded. The cited Code provisions do "not [themselves] create an additional standard of care," but merely "define[ ] a particular hazardous condition — [i.e., defective plumbing fixtures] — to which a landlord's general duty of repair applies" (Juarez v Wavecrest Mgt. Team, 88 NY2d 628, 644 [1996]; see id. at 638 [concluding that the Administrative Code of the City of New York, requiring owners of multiple dwellings to "remove or cover paint containing specified hazardous levels of lead in any apartment in which a child six years of age or younger resides," did not obligate the building owners "to ascertain whether such a child resides in any of the dwelling units and then to inspect those units for dangerous lead conditions"]). A landlord's duty of repair generally does not arise unless "the landlord had actual or constructive notice of the [defective] condition for such a period of time that, in the exercise of reasonable care, it should have been corrected" (id. at 646). Nothing in the cited Code provisions "expressly eliminate[s] the common-law notice requirement" in this regard (id.).
We further emphasize that plaintiff's [*4]lease agreement expressly provided that, if the tenant failed to provide written notice of the need to repair the hot water equipment servicing the unit, the landlord would "not be liable for any damages arising out of [the failure] to furnish such services." While plaintiff's architectural expert opined that "it is the responsibility of the property owner to maintain safe premises for its occupants, which includes the inspection of safety equipment such as the subject mixing valve in accordance with the manufacturer's instructions," the instructions manual pertaining to the mixing valve did not set forth any maintenance or inspection schedule. Correspondingly, plaintiff's engineering expert recognized that the manufacturer of the water heater, defendant Bradford White Corporation, did not provide instructions on inspecting and testing the mixing valve, despite requiring the addition of the mixing valve to the hot water heater.
The cases in which an affirmative duty to engage in periodic inspections of property has been imposed are factually distinct (compare Dufrain v Hutchings, 112 AD3d 1212, 1212 [3d Dept 2013]; Hayes v Riverbend Hous. Co., Inc., 40 AD3d at 501; Personius v Mann, 20 AD3d at 617), and do not support the imposition of such a duty here (see Rossal-Daub v Walter, 97 AD3d 1006, 1007 [3d Dept 2012]; Pommerenck v Nason, 79 AD3d 1716, 1717 [4th Dept 2010]; Appleby v Webb, 186 AD2d 1078, 1079 [4th Dept 1992]). In similar cases seeking to hold landlords liable for scald injuries sustained as a result of hot water surges from defective hot water equipment, including mixing valves, the First Department has analyzed whether the landlords had notice of a potential defect sufficient to trigger a duty of repair (see e.g. Carlos v 395 E. 151st St., LLC, 41 AD3d 193, 196 [1st Dept 2007]; Baumgardner v Rizzo, 35 AD3d 223, 224 [1st Dept 2006], lv denied 8 NY3d 806 [2007]). We decline to depart from the general rule that liability does not attach in the absence of notice.
Nor does the doctrine of res ipsa loquitor apply to hold defendants liable. Under this doctrine, "[w]here the actual or specific cause of an accident is unknown, . . . a jury may in certain circumstances infer negligence merely from the happening of an event and the defendant's relation to it" (Lloyd v 797 Broadway Group, LLC., 216 AD3d 1290, 1294 [3d Dept 2023] [internal quotation marks and citations omitted]). The doctrine only applies in limited circumstances where the event is "of a kind which ordinarily does not occur in the absence of someone's negligence"; was caused by an "instrumentality within the exclusive control of the defendant"; and was not "due to any voluntary action or contribution on the part of the plaintiff" (Morejon v Rais Constr. Co., 7 NY3d 203, 209 [2006] [internal quotation marks and citations omitted]; see Kyte v Mid-Hudson Wendico, 131 AD3d 452, 453 [2d Dept 2015]). The event at issue here — the sudden malfunction of a mixing valve installed on a hot [*5]water heater which was set to lower the water temperature to an appropriate level — is not of a kind "which ordinarily does not occur in the absence of someone's negligence" (Morejon v Rais Constr. Co., 7 NY3d at 209 [internal quotation marks and citations omitted]; compare Spivak-Bobko v Gregory Arms, LLC, 208 AD3d 1603, 1605 [4th Dept 2022]). Moreover, as aptly noted by Supreme Court, plaintiff's "operation of the hot water in the sink precludes the application of the doctrine" because the temperature of the water flowing from the kitchen faucet was at least partly within plaintiff's control. Finally, we agree with plaintiff that Supreme Court erred in relying on an unfounded report from the Child Protective Services Unit (hereinafter CPS) of the Saratoga County Department of Social Services and an unsworn note from defendants' former superintendent in granting summary judgment to defendants.[FN3] Even so, we conclude that summary judgment was properly granted to defendants without regard to that documentation.
Garry, P.J., Reynolds Fitzgerald, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Supreme Court previously dismissed the complaint against the other named defendants. The propriety of that determination is not at issue on this appeal.

Footnote 2: The mixing valve was tested in April 2019 to determine the water temperature, but was not taken apart to examine the internal valves.

Footnote 3: Social Services Law § 422 (4) (A) (e) provides that a CPS report is confidential but may be made available to a court with respect to "information . . . necessary for a determination of an issue before the court." Pertinent in that regard, Supreme Court was authorized to review the CPS report with respect to a caseworker's testing of the water temperature in the sink on the day of the incident (see C.T. v Brant, 202 AD3d 1360, 1362-1363 [3d Dept 2022]; Catherine C. v Albany County Dept. of Social Servs., 38 AD3d 959, 960 [3d Dept 2007]). That said, the court lacked authority to and erred in directing disclosure of the entire report.